TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-97-00421-CR







Isaac Thomas, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT


NO. 0972652, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING








 The jury found appellant guilty of the offense of capital murder. See Tex. Penal Code Ann.
§ 19.03 (West 1994). The State did not seek the death penalty. Accordingly, punishment was assessed
at confinement for life. See Tex. Penal Code Ann. § 12.31 (West 1994). Appellant asserts three points
of error, contending the trial court erred in: (1) admitting into evidence appellant's videotaped statement;
(2) admitting duplicate autopsy photographs; and (3) improperly charging the jury regarding accomplices
and parties. We will overrule appellant's points of error and affirm the judgment of the trial court.

 On January 7, 1997, the body of nineteen-year-old Darrell Porter, Jr., was discovered in
the trunk of his car. Travis County Medical Examiner Robert Bayardo described two types of injuries the
autopsy revealed, a blunt type injury that caved in the victim's skull and forty-eight stabs to the body. Dr.
Bayardo opined that the causes of death were the open cranial injury and stab wounds to the neck.

 Accomplice witness Andre Beavers testified under a grant of use immunity. On the night
in question, appellant, Beavers and the deceased were at Beaver's house. When appellant entered
Beaver's house, the deceased was counting what appeared to be a large sum of money. When the
deceased left the room to take a telephone call, appellant said "Man, we ought to hit this lick." 
Subsequently, appellant entered the room with the deceased. After hearing a "punch," Beavers found the
deceased lying on the floor unconscious with appellant straddled over him going through his pockets. After
appellant stabbed the deceased in the neck, Beavers, at appellant's request, took the knife and stuck it in
the deceased's throat. After appellant struck the deceased with a "BB gun" several times, Beavers and
appellant wrapped the deceased in a bed sheet and placed his body in the trunk of a car. Items taken from
the deceased's car were divided between appellant and Beavers.

 Other incriminating testimony came from Brent Alexander, who saw appellant on the
occasion in question carrying what appeared to be a large bundle of clothes at the end of which were two
shoes. Appellant dropped the clothes in the trunk of a car, and "the whole car went down like it was
heavy." DPS criminologist Gary Molina testified that DNA testing showed blood samples from the victim
matched blood stains on objects belonging to Beavers and appellant. Gloria Roberts negated appellant's
alibi contained in his video statement that he was with her at the time in question. Roberts further testified
that appellant, by both telephone call and letter, had tried to get her to testify that she was with him in order
that appellant might have an alibi.

 In his first point of error, appellant contends the trial court erred in admitting into evidence
appellant's videotaped statement in which appellant repeatedly requested that the interview be terminated. 
Appellant directs our attention to the following statements made by appellant in the videotaped interview:
(1) "I don't know, I don't know what's goin' on"; (2) "crank it up"; (3) "I ain't got nothing to say"; (4) that
he did not have anything to "spit out"; (5) "Allright, I ain't got nothing else to say here. Really getting
nowhere"; (6) "Put me in a cell, whatever y'all got to do. I ain't got nothing else to say." At this point
questioning ceased. Appellant notes that he had previously refused to sign a waiver of his Miranda rights.

 If a suspect is in custody, then a failure to cut off questioning after a suspect invokes his
right to remain silent violates his rights and renders any subsequently obtained statement inadmissible. See
Michigan v. Moseley, 423 U.S. 96, 101-102 (1975). Accordingly, the issue we must resolve is whether
appellant's statements contained in the videotape constituted an invocation of his rights to remain silent.

 Appellant cites the following statements from Phillips and Murphy that courts have held
to constitute a suspect's invocation of his right to remain silent. When the suspect was asked whether he
wanted to discuss the offense, the suspect replied that he "wanted a little time" to think about the matter. 
See Phillips v. State, 701 S.W.2d 875, 891 (Tex. Crim. App. 1985), cert. denied, 477 U.S. 909 (1986). 
The suspect stated that he had heard of the robbery-murder in Houston but he "didn't see how he could
help himself by talking." See Murphy v. State. 766 S.W.2d 246, 249 (Tex. Crim. App. 1989).

 "Maybe I should talk to a lawyer" has been held by the United States Supreme Court to
be such an ambiguous request as to not require officers to cease questioning. See Davis v. United States,
129 L. Ed. 362 (1994). In Davis, the Supreme Court set the following standard for determining whether
a suspect had requested counsel:


[T]he suspect must unambiguously request counsel. As we have observed, "a statement
either is such an assertion of the right to counsel or it is not." Although a suspect need not
"speak with the discrimination of an Oxford don," he must articulate his desire to have
counsel present sufficiently clearly that a reasonable police officer in the circumstances
would understand the statement to be a request for an attorney.



Id. at 371 (citations omitted).

 In Dowthitt v. State, 931 S.W.2d 244 (Tex. Crim. App. 1996), the Court of Criminal
Appeals utilized the Davis standard in determining whether the suspect had invoked his right to remain
silent. The suspect's statement that "I can't say more than that. I need to rest" did not constitute an
"unambiguous invocation of the right to remain silent." Id. at 257. The Dowthitt court found that the
suspect's statement indicated that "he believed he was physically unable to continue--not that he desired
to quit." Id.

 In the instant cause, the appellant's statements that "I ain't got nothing to say" are
sufficiently unambiguous that a reasonable police officer in the circumstances would understand that
appellant was invoking his right to remain silent. However, our inquiry does not end with the foregoing
conclusion because an improperly admitted statement does not call for reversal if the reviewing court
determines beyond a reasonable doubt that the admission of the evidence did not contribute to the
conviction or the punishment. See Hicks v. State, 860 S.W.2d 419, 430 (Tex. Crim. App. 1993), cert.
denied, 512 U.S. 1227 (1994). There were no inculpatory admissions in appellant's statement. Prior to
stating that he had nothing to say, the video contained a statement that he had been with Gloria Roberts on
the occasion in question. Roberts testified without objection that appellant had tried to get her to furnish
him an alibi by testifying falsely that she had been with him. Moreover, officer Robert Merrill who had
conducted the questioning of appellant testified without objection as to the contents of appellant's
confession. The evidence was overwhelming in proving appellant's guilt. We hold that the admission of
appellant's videotaped statement was harmless beyond a reasonable doubt. Appellant's first point of error
is overruled.

 In his second point of error, appellant asserts the trial court erred in admitting duplicative
photographs of the deceased. Harrington v. State, 547 S.W.2d 621, 625-26 (Tex. Crim. App. 1997),
contains a succinct statement of the rule governing the admission of autopsy-type photographs:


If a photograph is competent, material and relevant to the issues on trial, the photograph
will not be inadmissible because it is gruesome, unless it is offered solely to inflame the
minds of the jury. If a verbal description of the body and the scene would be admissible,
a photograph depicting the same is admissible. Only when the probative value of the
photograph is very slight and the inflammatory aspects great will it be an abuse of
discretion to admit the photographs.



 Appellant complains that the trial court admitted approximately eighteen autopsy
photographs. More specifically, appellant directs our attention to the admission of four pictures of the
deceased's right hand. Appellant argues that the reduced value of duplicative photographs results in their
probative value being outweighed by their prejudicial value. See Tex. R. Crim. Evid. 403.

 The record reflects that appellant objected to the introduction of ten photographs on the
basis that they were duplicative of pictures already introduced without objection. The trial court sustained
appellant's objection to two of the pictures. With respect to the other photographs, the trial court found
the "remainder of the photographs appear to depict different injuries as described by the doctor -- while
some injuries are depicted in more than one photograph, each of the photographs appears to also contain
injuries that were not depicted clearly in the other photographs that may have some identical injuries." Dr.
Bayardo's testimony revealed that his examination of the deceased's body showed 58 stabs and cuts and
multiple blunt injuries.

 It is undisputed that a trial court has broad discretion in admitting or excluding evidence. 
Only when a trial court has abused its discretion should an appellate court conclude that the ruling was
erroneous. The trial court's findings reflect that it made a careful examination of the photographs. We hold
that the trial court did not err in admitting the photographs in evidence. Appellant's second point of error
is overruled.

 In his third point of error, appellant contends the trial court's charge to the jury contains
inconsistent instructions on the law of accomplice witness testimony and the law of parties. Specifically,
appellant complains about the charge on the law of parties when the law on accomplice witness testimony
is given. The basis of appellant's complaint is if there is evidence that appellant committed the charged
offense personally but insufficient evidence he acted as a party to another's commission of the offenses, then
it is error to charge the jury on the law of parties.

 Beavers testified that he stuck a knife in the deceased's throat, divided the spoils taken
from the deceased, and helped wrap the body of the deceased. Dr. Bayardo opined stab wounds to the
neck as one of the causes of death. "A person is criminally responsible for an offense committed by the
conduct of another if: [A]cting with intent to promote or assist the commission of the offense, he solicits,
encourages, directs, aids, or attempts to aid the other person to commit the offense." Tex. Penal Code
Ann. § 7.02(a)(2) (West 1994). We find that the evidence supports an instruction on the law of parties.

 Appellant cites no authority to support his position nor do we find any. We are not
persuaded that instructions on the law of accomplice witness testimony and the law of parties are mutually
exclusive. Appellant has not shown any harm resulting from the trial court having given both instructions
nor do we perceive of any harm to appellant. Appellant's third point of error is overruled.

 The judgment is affirmed.




 

 Tom G. Davis, Justice

Before Chief Justice Yeakel, Justices Aboussie and Davis*

Affirmed

Filed: August 31, 1998

Do Not Publish





* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. See Tex.
Gov't Code Ann. § 74.003(b) (West 1988).



/SPAN>



 Appellant complains that the trial court admitted approximately eighteen autopsy
photographs. More specifically, appellant directs our attention to the admission of four pictures of the
deceased's right hand. Appellant argues that the reduced value of duplicative photographs results in their
probative value being outweighed by their prejudicial value. See Tex. R. Crim. Evid. 403.

 The record reflects that appellant objected to the introduction of ten photographs on the
basis that they were duplicative of pictures already introduced without objection. The trial court sustained
appellant's objection to two of the pictures. With respect to the other photographs, the trial court found
the "remainder of the photographs appear to depict different injuries as described by the doctor -- while
some injuries are depicted in more than one photograph, each of the photographs appears to also contain
injuries that were not depicted clearly in the other photographs that may have some identical injuries." Dr.
Bayardo's testimony revealed that his examination of the deceased's body showed 58 stabs and cuts and
multiple blunt injuries.

 It is undisputed that a trial court has broad discretion in admitting or excluding evidence. 
Only when a trial court has abused its discretion should an appellate court conclude that the ruling was
erroneous. The trial court's findings reflect that it made a careful examination of the photographs. We hold
that the trial court did not err in admitting the photographs in evidence. Appellant's second point of error
is overruled.

 In his third point of error, appellant contends the trial court's charge to the jury contains
inconsistent instructions on the law of accomplice witness testimony and the law of parties. Specifically,
appellant complains about the charge on the law of parties when the law on accomplice witness testimony
is given. The basis of appellant's complaint is if there is evidence that appellant committed the charged
offense personally but insufficient evidence he acted as a party to another's commission of the offenses, then
it is error to charge the jury on the law of parties.

 Beavers testified that he stuck a knife in the deceased's throat, divided the spoils taken
from the deceased, and helped wrap the body of the deceased. Dr. Bayardo opined stab wounds to the
neck as one of the causes of death. "A person is criminally responsible for an offense committed by the
conduct of another if: [A]cting with intent to promote or assist the commission of the offense, he solicits,
encourages, directs, aids, or attempts to aid the other person to commit the offense." Tex. Penal Code
Ann. § 7.02(a)(2) (West 1994). We find that the evidence supports an instruction on the law of parties.

 Appellant cites no authority to support his position nor do we find any. We are not
persuaded that instructions on the law of accomplice witness testimony and the law of parties are mutually
exclusive. Appellant has not shown any harm resulting from the trial court having given both instructions
nor do we perceive of any harm to appellant. Appellant's third point of error is overruled.

 The judgment is affirmed.